**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CHRISTOPHER SHAW**                                              **PLAINTIFF**
**ADC #174108**

**V.**                            **NO. 4:25-cv-01214-KGB-ERE**

**JONATHAN BECK and**
**EDDIE JORDAN**                                                  **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections

This Recommended Disposition ("RD") has been sent to United States Chief District Judge Kristine G. Baker. You may file objections to all or part of this RD. Objections should be specific, include a factual or legal basis for the objection, and be filed within fourteen days of the date of this RD. If you do not object, you risk waiving the right to appeal questions of fact.

### II.   Background

*Pro se* plaintiff Christopher Shaw, an Arkansas Division of Correction ("ADC") inmate, filed this 42 U.S.C. § 1983 case. *Doc. 2*. Mr. Shaw's amended complaint alleges that: (1) Lieutenant Jonathan Beck sprayed him with a chemical agent without justification; and (2) Lieutenant Eddie Jordan failed to provide him an

adequate opportunity to decontaminate himself after the incident. Doc. 7.[1] He sues both Defendants in their individual capacities for monetary damages.

Mr. Shaw is currently proceeding on: (1) an individual capacity excessive force claim against Defendant Beck; and (2) an individual capacity deliberate indifference claim against Defendant Jordan.

Defendants have filed a motion for summary judgment, statement of undisputed facts, and brief in support arguing that Mr. Shaw failed to exhaust his administrative remedies as to his pending claims against them before filing this lawsuit. *Docs. 16, 17, 18.* Mr. Shaw has responded to Defendants' motion and Defendants have replied. *Docs. 21, 22, 23, 24*. The motion is now ripe for review.

For the reasons that follow, Defendants' motion should be granted.

## III.    **Discussion**

### A.    **The PLRA Makes Exhaustion Mandatory**

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v.*

---

[1] Because Mr. Shaw's original complaint was deficient, I provided him an opportunity to file an amended complaint clarifying his constitutional claims. *Doc. 6.*

*Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Shaw*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Shaw v. Bock*, 549 U.S. 199, 218 (2007). To resolve the exhaustion question, the Court must determine: (1) what administrative remedies the ADC made available to inmates to bring and resolve claims; and (2) whether Mr. Shaw complied with prison requirements for exhausting his available administrative remedies.

## B.    The ADC Grievance Procedure

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34. *Doc. 16-2*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising the claim with the Warden within three business

days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*.

ADC staff should provide inmates both a yellow and pink copy of their Unit Level Grievance Forms after submitting their "Step One" informal resolution. *Id. at 7*. To appeal to "Step Two," an inmate must attach the "most legible copy" of their Unit Level Grievance Form to their appeal. *Id. at 8*. "Whether or not the problem is resolved [at Step Two] the inmate should retain either the pink or yellow copy, whichever he did not submit for Step Two." *Id. at 9*. Finally, to appeal to "Step Three, an inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id*. If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id*.

The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejects the appeal. *Id. at 13*.

To complete the exhaustion process before bringing this lawsuit, Mr. Shaw was required to present his claims against Defendants in a timely filed grievance and pursue all three steps of the ADC's grievance process until he either received a

decision on the merits at the final stage or ADC officials improperly failed to provide a merits decision. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).") (citation omitted) (emphasis in original); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (a prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits.").

### C.   Mr. Shaw's Grievance History

Defendants submit the declaration of ADC Inmate Grievance Supervisor Terri Grigsby Brown, who testifies that Mr. Shaw filed one grievance related to the claims raised in this lawsuit, WR-25-00043. *Doc. 16-1 at 8*.

On January 21, 2025, Mr. Shaw initiated grievance WR-25-00043 complaining that, on that date, as ADC staff, including Defendants Jordan and Beck, approached his cell with another inmate, Defendant Beck ordered Mr. Shaw "to get up against the wall." *Id*. After Mr. Shaw complied with Defendant Beck's order, Mr. Shaw told Defendant Beck that he did not want a cellmate. *Id*. At that time, Defendant Beck removed his can of mace and stated, "I ain't gonna tell you no more!" *Id*. Defendant Beck then approached Mr. Shaw and "sprayed [him] all in [his] face lea[v]ing [him] to suffer by walking off and slamming the door." *Id*. Following the incident, ADC officers took Mr. Shaw to shower, then to the

infirmary. *Id*. Mr. Shaw explained that Defendant Jordan told him "it was no justification in Lt. Beck actions," and non-party Cpl. Spencer said he would "write a statement on [Lt. Beck]." *Id*.

On January 27, 2025, Defendant Beck responded to Mr. Shaw's grievance by explaining that, during the incident, Mr. Shaw was noncompliant and began "banging on the wall" and "continually turning around while [Defendant Beck] was attempt[ing] to secure the cell door." *Id*.  After Defendant Beck issued a third direct order for Mr. Shaw to face the wall, Mr. Shaw turned around aggressively. *Id*. At that time, Defendant Beck administered one burst of the chemical agent. *Id*.

On January 29, 2025, Mr. Shaw appealed that grievance decision. *Id*.

On February 5, 2025, an ADC Inmate Grievance Coordinator sent Mr. Shaw an Acknowledgement or Rejection of Unit Level Grievance Form. *Id. at 7*. The Form stated that Mr. Shaw's grievance would be addressed by the Warden/Center Supervisor or designee, and that Mr. Shaw would receive communication regarding the grievance by March 6, 2025. *Id*.

On March 3, 2025, an ADC Superintendent sent Mr. Shaw a Grievance Extension Form stating that additional time was necessary to complete the investigation into Mr. Shaw's grievance and that the Chief Deputy/Deputy/Assistant Director would answer his appeal by April 8, 2025.  *Id. at 6*.

6

On March 5, 2026, Warden Moses Jackson responded to Mr. Shaw's grievance appeal stating, "[y]our allegation has been investigated, and necessary steps have been taken." *Id. at 4*.

On March 12, the Chief Deputy Director received Mr. Shaw's final grievance appeal but rejected it because Mr. Shaw did not attach the Unit Level Grievance Form to his appeal. *Id. at 3*.

In his response to Defendants' motion, Mr. Shaw argues that, although he fully exhausted his available administrative remedies, ADC officials failed to follow the ADC grievance procedure in addressing his grievance. I disagree.

First, Mr. Shaw argues that he never received the March 3, 2026 Grievance Extension Form, nor is that Form signed by him or any ADC employee. *Doc. 21 at 1*. However, Mr. Shaw does not dispute that he received the February 5 Acknowledgment or Rejection of Unit Level Grievance Form. That Form advised Mr. Shaw that he would receive a grievance decision by March 6, 2026. *Doc. 16-3 at 7*. On March 5, Warden Jackson timely responded to Mr. Shaw's grievance appeal. As a result, whether Mr. Shaw received the Grievance Extension Form is irrelevant.

In addition, Mr. Shaw argues that he could not have included the Unit Level Grievance Form in his grievance appeal because ADC staff members kept that Form until March 7, 2025, a day past the March 6 deadline. Mr. Shaw explains that he

moved on to the final level of the grievance process when he did not receive the Warden's response by March 6. However, as Defendants correctly explain in their reply to Mr. Shaw's response, the ADC inmate grievance procedure provides that Mr. Shaw should retain two copies of his Unit Level Grievance Forms for use during the grievance process. *Doc. 16-2 at 8-9, Doc. 24-1 at 2*. Here, Mr. Shaw does not allege that ADC staff members initially failed to provide him two copies of his Unit Level Grievance Form. So he should have had a copy of the Unit Level Grievance Form at issue to submit with his final appeal.

In addition, while Defendant Jordan is referenced in grievance WR-25-00043, there are no allegations Defendant Jordan failed to allow Mr. Shaw to decontaminate after Defendant Beck sprayed him with a chemical agent. As a result, Mr. Shaw's pending claim against Defendant Jordan is subject to dismissal for this additional reason.

For valid procedural reasons, the ADC failed to provide Mr. Shaw with a final decision on the merits of grievance WR-25-00043. As a result, the claims raised in this grievance were not fully exhausted.

## IV.   <u>Conclusion</u>

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' motion for summary judgment (*Doc. 16*) be GRANTED.

2.    Mr. Shaw's claims against Defendants be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3.    The Clerk be instructed to close this case.

DATED 26 May 2026.


_____
UNITED STATES MAGISTRATE JUDGE